UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY LINGO, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:22-1275 |
| v. | : | (JUDGE MANNION) |
| BHI ENERGY POWER SERVICES, | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the court is Plaintiff Rodney Lingo's Motion to Remand. (Doc. 9). Based on the court's review of the motion and related materials, Lingo's motion will be **GRANTED**.

## I.  BACKGROUND

Lingo filed this putative class action on July 18, 2022, in the Luzerne County Court of Common Pleas. (Doc. 1-1). Lingo's complaint asserted state law claims against the defendant (BHI) under the Pennsylvania Minimum Wage Act (PMWA) and Pennsylvania's Wage Payment and Collection Law (WPCL). On August 15, 2022, BHI timely removed the action to this court based on diversity jurisdiction under 28 U.S.C. §1332(a), arguing there is complete diversity of citizenship between the parties and

the amount in controversy exceeds the $75,000 jurisdictional minimum. (Doc. 1).

On August 25, 2022, Lingo filed the pending motion for remand, (Doc. 8), and a supporting brief, (Doc. 9). Lingo does not dispute that there is complete diversity of citizenship between the parties. However, Lingo argues BHI has failed to demonstrate that the relief Lingo seeks satisfies the jurisdictional minimum for the amount in controversy. BHI filed a brief in opposition to the motion for remand on September 8, 2022. (Doc. 15). Lingo filed a reply brief on September 22, 2022. (Doc. 19). With leave of court, BHI filed a sur reply on October 7, 2022.[1] (Doc. 23).

---

[1] The parties dispute whether Lingo's counsel notified BHI under Local Rule 7.1 of his intention to file the instant motion for remand. BHI's counsel swears it was not notified (Doc. 15); Lingo's counsel swears he gave notice (Doc. 19). Unfortunately, at least one party is, at best, mistaken. Regardless, while compliance with the Local Rules is nonnegotiable in this court, Lingo's compliance with Rule 7.1, or lack thereof, has no practical effect in deciding this motion. In any case removed from a state court to a federal court, the district court is obligated to remand the case if it lacks subject matter jurisdiction. *See* 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("[Section 1447(c)] allows and indeed compels a district court to address the question of jurisdiction, even if the parties do not raise the issue."). Thus, even if the court could discern which party is mistaken based on the record—which it cannot—the court cannot ignore the jurisdictional defects in this case by denying Lingo's remand motion for alleged noncompliance with local rules.

There is also a motion to dismiss pending in this action which BHI filed on September 6, 2022. (Doc. 13). Before this case was reassigned to the undersigned, Judge Saporito appropriately granted Lingo's motion to stay the briefing schedule on BHI's motion to dismiss pending the resolution of the instant motion for remand. (Doc. 18).

## II.   LEGAL STANDARD

Under 28 U.S.C. §1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original jurisdiction. A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court. *See* 28 U.S.C. §1447(c). If the district court indeed lacks subject matter jurisdiction, it must remand to the state court from which the action was removed. *Id.*

"[T]he federal courts are without power to adjudicate the substantive claims in a lawsuit, absent a firm bedrock of jurisdiction." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977). As such, statutes permitting removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (quoting *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)). Where the basis for removal is diversity of citizenship under 28 U.S.C. §1332, as it is in this case, "the Congressional intent to restrict federal diversity jurisdiction [must

be] honored." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal diversity jurisdiction is restricted to cases between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. §1332(a).

It is settled "in [the Third Circuit] that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel–Bassett v. KIA Motors America, Inc.,* 357 F.3d 392, 396 (3d Cir.2004)); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (In a removal case, "[i]t remains the defendant's burden to show the existence and continuance of federal jurisdiction."). Thus, to invoke diversity jurisdiction in this case, BHI must establish that the matter is between citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. §1332(a).

### III. DISCUSSION

As an initial matter, the parties do not dispute, and the court is satisfied, that the first element of diversity jurisdiction is met here because Lingo and BHI are citizens of different states.[2] Thus, the court will address the disputed

---

[2] Lingo is a citizen of Pennsylvania. BHI is a Delaware limited liability company and a wholly owned subsidiary of Bartlett Holdings, LLC. Bartlett

4

second element of diversity jurisdiction—whether the amount in controversy exceeds $75,000.

### A. Amount in Controversy

Lingo argues removal was improper because BHI failed to show the amount in controversy exceeds the $75,000 jurisdictional minimum. (Doc. 9). As stated above, it is the party invoking a federal court's diversity jurisdiction who must establish that the amount in controversy exceeds $75,000, excluding interest and costs. *See* 28 U.S.C. §1332(a); *see also Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). Accordingly, having removed this case from state court, BHI bears the burden of establishing the requisite amount in controversy.

The court typically determines the amount in controversy by looking at the sum demanded in the complaint. *See* 28 U.S.C. §1446(c)(2); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014). However, where, as here, state practice permits (or requires) a plaintiff to forgo specifying a sum, the amount in controversy is determined by the amount asserted in the notice of removal. *See* 28 U.S.C. §1446(c)(2)(A)(ii); *Dart*

---

Holdings, LLC, is a Delaware limited liability company and a wholly owned subsidiary of Bartlett Holdings, Inc.—a Delaware corporation with its principal place of business in Massachusetts. (Doc. 1).

*Cherokee*, 574 U.S. at 84. Absent a challenge from the plaintiff, the court accepts the amount asserted in the notice of removal. *Dart Cherokee*, 574 U.S. at 87. However, if the plaintiff challenges the amount claimed, both sides submit proof, and the court determines whether the defendant has established, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *See id.* at 88; *Hill v. Kalahari Resorts PA, LLC*, No. 3:21-CV-1036, 2021 WL 5494288, at *2 (M.D. Pa. Nov. 23, 2021) (citing *Dart Cherokee*); *Complete Bus. Sols. Grp., Inc. v. Annie's Pooch Pops LLC*, No. CV 20-724, 2020 WL 4040589, at *1 (E.D. Pa. July 18, 2020) (same).

It is true, as BHI asserts, that a defendant must make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" in its notice of removal. *See Dart Cherokee*, 574 U.S. at 89. But contrary to BHI's iterations, it is not true that the defendant's burden stops there in every removal case. Instead, evidence establishing the amount in controversy is required when, as in this case, "the plaintiff contests, or the court questions, the defendant's allegation." *Id.* Based on that evidence, the court must then decide whether plaintiff's claim exceeds $75,000 by a preponderance of the evidence. *Id.*

Considering all the evidence, the court measures the amount in controversy not by "the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley*

6

*Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). Importantly, the alleged amount in controversy must be objective and realistic, "not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts." *Samuel-Bassett*, 357 F.3d at 403. At bottom, if "the court is left to guess at whether the jurisdictional threshold has been met, then a removing defendant has not carried its burden." *Rossi v. Neumayr*, No. 3:20-CV-00844, 2020 WL 6710428, at *2 (M.D. Pa. Nov. 16, 2020) (quoting *Dorley v. Save-A-Lot*, No. 16-CV-04510, 2016 WL 6213074, at *2 (E.D. Pa. Oct. 25, 2016)).

Here, a reasonable reading of the complaint reveals that Lingo requests damages due to BHI's alleged failure to pay him overtime wages. (*See* Doc. 1-1). Specifically, Lingo claims he worked for BHI as a non-exempt hourly employee for four weeks from March 2020 to April 2020, and BHI allegedly failed to pay him for approximately 90 minutes each day for time spent performing pre-shift and post-shift activities. The categories of Lingo's potential recovery to consider in determining the amount in controversy are not in dispute; they encompass (1) Lingo's back wages for unpaid overtime, (2) "liquidated damages" under the WPCL, and (3) attorney fees under the PMWA and WPCL.[3] The issue is whether a preponderance of the evidence reveals that these categories of recovery exceed $75,000.

---

[3] Lingo's complaint also requests costs, and pre- and post-judgment interest. (Doc. 1-1). However, the amount in controversy must exceed $75,000, *exclusive of* interest and costs, *see* 28 U.S.C. §1332(a), so those requests are not considered in determining the amount in controversy.

7

Lingo argues his pay and time records submitted to the court show his back wages amount to, at most, $4,410.00. (Docs. 8-1, 8-2). That sum increases to $5,512.50 if he is successful on his WPCL claim because that statute provides for additional "liquidated damages" of 25% "of the total amount of wages due, or five hundred dollars ($500), whichever is greater." 43 P.S. §260.10. Thus, before factoring in attorney fees, Lingo's potential damages for purposes of determining the amount in controversy are $5,512.50. BHI does not dispute this figure.[4]

BHI contends that Lingo's potential attorney fees award, of itself, will exceed $75,000, bringing this case within the court's jurisdiction. (Doc. 15). BHI offers two pieces of evidence in support. First, BHI's notice of removal incorporated the declaration of Attorney Linda Dwoskin, BHI's counsel, in which she declared, "Based on my practice of law in the Commonwealth of Pennsylvania and litigation of [PMWA and WPCL claims], I anticipate Plaintiff's attorneys' fees will likely exceed the jurisdictional minimum of $75,000." (Doc. 1-4). Second, BHI attached the declaration of Attorney David W. Long-Daniels, counsel for BHI, to its sur-reply. (Doc. 20-2). Long-

---

[4] BHI's notice of removal corroborates Lingo's calculation of the amount in controversy before attorney fees. The notice states, consistent with Lingo's pay stubs, that Lingo "earned a straight-time hourly rate of $70.00 per hour, and an overtime rate of $105.00 per hour for an extended period of time." (Doc. 1). BHI also attached to the notice a declaration of BHI's vice president and corporate counsel confirming Lingo's hourly rates of pay. (Doc. 1-3).

Daniels declares that Lingo's counsel, Attorney Andrew Dunlap, stated in a meet and confer conference that he handled a similar case against BHI in federal court in Massachusetts (*Klapatch*). Long-Daniels then declares that attorney fees exceeded $75,000 in the *Klapatch* case, citing to document number 61 on the docket—an electronic order granting a motion for settlement with no indication of the size of the attorney fees award.[5]

In general, if attorney fees are recoverable by the plaintiff, the fee claim is included in determining the amount in controversy. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("[A]ttorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."). "Reasonable" attorney fees are available under Lingo's PMWA and WPCL claims, thus the court will consider them in determining the amount in controversy. *See* 43 P.S. §333.113 (PMWA); 43 P.S. §260.9a (WPCL). The question then becomes whether the court would award Lingo over $69,487.50 in attorney fees in addition to his potential $5,512.50 in compensatory and liquidated damages to bring the amount in controversy past $75,000. Clearly, such an award would be excessive, and BHI has not come forward with plausible

---

[5] The motion for settlement indicates the attorney fees award was 33% of the settlement fund—the sum of which is unknown since the settlement agreement is under seal. *See* Motion for Settlement, Doc. 58, *Klapatch et al. v. BHI Energy I Power Services, LLC*, No. 1:18-cv-11581-RGS (D. Mass. September 5, 2019).

9

evidence to suggest otherwise. As Lingo points out, an attorney fees award of approximately 30 percent is considered reasonable in the Third Circuit, which would bring his claim to just $7,166.25. *See Frederico*, 507 F.3d at 199 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (noting the Federal Judicial Center's median figure of 27 to 30 percent fee recovery in class actions)).

When a plaintiff's claim for attorney fees comprises the bulk of the amount in controversy, the court should give that claim particularly close scrutiny.[6] That principle is equally applicable in this context, where it is the removing defendant that is claiming the plaintiff's claim for attorney fees brings a $5,512.50 case past the $75,000 mark. Many district courts in the Third Circuit have rejected arguments that a plaintiff's claim met the amount in controversy by relying primarily on an attorney fees award.[7]

---

[6] *See Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("[W]hen it appears that [a punitive damages] claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny."); *Flail v. Travelers Companies*, Civ. No. 98–CV–1254, 1998 WL 709296 at *2 (E. D. Pa. Oct. 6, 1998) ("This logic [from *Packard*] applies with equal strength to a claim for attorney's fees.") (citations omitted).

[7] *See, e.g., Flail*, 1998 WL 709296 at *3 (finding that amount in controversy could not exceed $75,000 by aggregating potential attorneys' fees where compensatory damages were a maximum of $5,000); *Neff v. Gen. Motors Corp.*, 163 F.R.D. 478, 484 (E.D. Pa. 1995) ("It is hard to conceive how a $10,000 claim, already statutorily trebled, could support a reasonable attorneys' fee of $40,000."); *Hoffman v. Pharmacare US Inc.*,

In this case, BHI would have the court enter an order finding by a preponderance of the evidence that Lingo's attorney fee award may exceed his damage award by a multiple just short of *thirteen* ($69,487.50 divided by $5,512.50). It is theoretically possible for an attorney fees award to exceed an award of damages, but the court is hard-pressed to find any evidence that an attorney fees award in this case—or any case for that matter—could be thirteen times an award of damages. BHI, though required under applicable law, has not come forward with evidence showing otherwise.

Attorney Dwoskin's speculation that she "anticipates" Lingo's attorney fees will exceed $75,000 does not negate the fact that such an award is unrealistic in this case. *See Samuel-Bassett,* 357 F.3d at 403 (The alleged amount in controversy must be objective and realistic, "not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts."). Moreover, BHI's citation to an ostensibly similar case in federal district court in Massachusetts (*Klapatch*) is inapposite. BHI argues that the *Klapatch* case has "similar facts and issues to the present case," and thus the attorney fees

---

No. CV 17-3540 (CCC), 2017 WL 6758444, at *5 (D.N.J. Dec. 14, 2017), *report and recommendation adopted*, No. 2:17-CV-03540, 2017 WL 6757557 (D.N.J. Dec. 29, 2017) (amount in controversy not satisfied by potential attorney fees when compensatory damages were approximately $44.97) *Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339, 346 (D.N.J. 1998) (amount in controversy could not be satisfied by potentially excessive award of attorneys' fees where plaintiff, if successful, would receive approximately $300 in damages).

11

award will exceed $75,000 here like it apparently did there. (Doc. 23). BHI does not explain why attorney fees will be as high here as they apparently were there.[8]

More to the point, BHI's argument hinges on the false premise that a party asserting federal diversity jurisdiction in a putative class action can aggregate the potential attorney fees awards from all potential class members to meet the amount in controversy. Conversely, where, as here, each class member is individually entitled to recover attorney fees under the relevant statute, the class members' claims are treated as separate and distinct and cannot be aggregated. *See Miller v. Wash. Trotting Assoc., LLC*, Civ. A. No. 17-231, 2017 WL 1179013, at *6-7 (W.D. Pa. Mar. 30, 2017) ("[P]arties cannot meet the jurisdictional amount by aggregating the claims for attorneys' fees by the lead plaintiff and the other unnamed class members[.]") (citing *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) ("[I]n general, the distinct claims of separate plaintiffs cannot be aggregated when determining the amount in controversy.")). "District courts have firmly rejected attempts to obtain diversity jurisdiction solely based on the aggregate amount of attorneys' fees that may be

---

[8] If anything, the *Klapatch* case seems to support Lingo's point that a reasonable estimate of his potential attorney fee award would be somewhere near 30% of his recovery, since the motion for settlement (which was granted) indicates that the attorney fees award was 33% of the settlement fund. *See* footnote 5, *supra*.

available for a proposed class action." *Miller*, 2017 WL 1179013, at *7 (citing *Kabana v. C.A.R.S. Prot. Plus, Inc.*, Civ. A. No. 15-7177 (SRC), 2015 WL 9308256, at *3 (D.N.J. Dec. 22, 2015) ("The amount in controversy for the named Plaintiff in this case does not include an entitlement to the aggregate legal fees of the proposed class.")).

"At most, proposed attorneys' fees must be prorated among the class members when valuing the individual claim." *Miller*, 2017 WL 1179013, at *7 (citing *W.C. Motor Company v. Talley*, 2014 WL 3882489, *5 (N.D. Ill. 2014) (citing Newberg on Class Actions) ("Like punitive damages, attorney fees must be divided *pro rata* among [named plaintiff] and the absent class members to compute the amount in controversy."); *Wright et al.*, FEDERAL PRACTICE AND PROCEDURE, §3704.2, 14AA Fed. Prac. & Proc. Juris. §3704.2 (4th ed.) ("But as is true of the judicial treatment of punitive damages, the case law indicates that as a general rule attorneys' fees in the multi-party or class action context cannot be aggregated; they must be prorated across all the representative plaintiffs and absent class members."); *Rubenstein, et al.*, NEWBERG ON CLASS ACTIONS §6:9 (5th ed.) ("[A]ttempts to conceptualize certain types of remedies as common so as to meet the test—for example, injunctions, restitution or disgorgement, attorney's fees, and punitive damages—generally fail because they represent a *pro rata* distribution rather than a single, undivided interest shared among the plaintiffs.")).

Thus, even assuming the aggregate attorney fees of Lingo's proposed class could exceed $75,000, as BHI posits, that sum must be allocated among all potential class plaintiffs on a *pro rata* basis for purposes of determining the amount in controversy. Lingo's complaint does not indicate the potential size of the proposed class, and BHI has not provided any evidence nor argument as to the size of the potential class from which the court could project *pro rata* attorney fees. In sum, BHI has not brought forth any evidence to show that an attorney fees award in this case, when considered on a *pro rata* basis, would bring plaintiff's claim past the jurisdictional threshold. BHI counsel's declaration citing the apparent attorney fee award of "millions of dollars" in *Klapatch*—without any averment as to the pro rata attorney fees award attributable to the plaintiff, nor any argument as to why the court could reasonably expect a similar attorney fee award in this case—does not move the needle.

BHI avers, in a footnote, "[Lingo's] calculation of attorneys' fees seems highly improbable given his specious allegations concerning others he wishes to represent and the undeterminable nature of the number of persons falling within his specious assertions." (Doc. 15). This averment, again, rests on the false premise that the court can aggregate all potential attorney fees in a class action to satisfy the amount in controversy. Moreover, even if the court could aggregate attorney fees, the court is still left to guess the amount of attorney fees that plaintiffs could reasonably

14

recover; as BHI admits, the size of the proposed class, and thus the potential aggregate attorney fees, is of an "undeterminable nature." As such, BHI has not shown by a preponderance of the evidence that the amount in controversy in this matter exceeds $75,000.

In short, the court has no basis for the expectation that the amount in controversy will multiply by approximately thirteen times from Lingo's potential compensatory and liquidated damages. As a result, BHI has not shown by a preponderance of evidence that the value of Lingo's complaint exceeds the jurisdictional minimum. Therefore, strictly construing the removal statutes and resolving all doubts in favor of remand, the court finds that BHI has not met its burden to establish the amount in controversy and will remand this case to state court.

### B. Attorney Fees and Costs for Litigating Remand

Lingo asks the court to award attorney fees and costs incurred in litigating the instant motion. (Doc. 9). Under 28 U.S.C. §1447(c), a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). As a general rule, courts may award attorneys' fees under Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *League of Women's Voters of Pa. v. Pennsylvania*, 921 F.3d 378, 383 (3d Cir. 2019) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141

(2005)). The court finds BHI's removal was not objectively unreasonable under the circumstances. Therefore, Lingo is not entitled to attorneys' fees.

## IV.   CONCLUSION

In light of the foregoing, the court finds that the defendant has not met its burden of establishing that the amount in controversy is sufficient to bring the plaintiff's claims before this court. The court is thus without jurisdiction to hear this case, and Lingo's motion to remand will be **GRANTED**. (Doc. 8). Moreover, the court will **DISMISS AS MOOT,** without prejudice to refiling in state court, BHI's motion to dismiss. (Doc. 13). An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: December 13, 2022**
22-1275-01